Good morning, and may it please the court, Craig Stewart on behalf of the appellants in the Fong Ai and Concord Manufacturing case. As we stated in our briefs, we join in and adopt the arguments of the appellants in the case that's just been argued, and in particular their assertion that it's ambiguous as to whether the language in 606B applies to non-residents and these workers who are coming to the CNMI, who are at issue here, came under a non-resident workers act, no path of citizenship for them, so that it's ambiguous in its application to those workers, and for the reasons that have been argued, both in the briefs and here again this morning, we believe that the covenant should be construed as not extending to these non-resident, non-citizen workers, and I think that's the only way that you can rationalize the whole thing, including in particular section 1301, which goes through and specifies for certain benefits provisions, which apply to the CNMI, and then leaves out for others that they apply only in Guam. How is that relevant? Well it's a, it was a statute that was enacted in the period immediately preceding, well I think it's, it expresses an understanding, we believe, of what Congress, how Congress viewed the covenant, and if the covenant applied across the board, and resolved all the benefits questions as to the CNMI, just by looking simply to what Guam would, why would you go through in 1301 and enumerate, in some cases they apply to the CNMI, in other cases they don't. But there was no such provision about the taxes. It's true, this is on benefits, but the 606B refers both to taxes and benefits, and then you look to 1301 and it's addressing benefits as though it wasn't resolved by 606B, that's the point, and I haven't heard the government... And therefore, therefore what? Well therefore I think we come back to the arguments that the appellants have made in the preceding case, that the way to rationalize... You're saying it was resolved, that's the argument that it was resolved, but it was resolved a different way than the government thinks it was resolved, but it's not an argument that it wasn't resolved. Well I think what it shows, I believe, is that 606B does not resolve it in the way that the government said it was resolved. Your Honor, I would like to move, just in the interest of time, to the main argument that we've made in our brief, which is if we accept the government's position that you have to look at how they apply in Guam, then the question is how do they apply in Guam? What is the situation in Guam? Let me say one thing, go ahead, but I would most like to hear about the excise tax problem. That seems to me to be the one point on which the closest issue in the case. Let me move to that, and then I would like to come back to our separate argument on 606B, because I think it hasn't been adequately answered by the government. On the excise tax, to me this is a plain language question. The covenant specifically refers to excise and self-employment taxes, and that's in contrast to an earlier draft, which had a very specific provision, excuse me, which had a more general provision that referred to those laws of the United States which imposed taxes to support. That frankly is the way the government's lawyer has referred to it this morning. She kept saying it imposes the taxes, it imposes social security taxes, and that's what an earlier draft of the covenant provided. The draft that was actually agreed to and adopted replaced that more general statement with a more specific that imposed self-employment, excuse me, excise and self-employment taxes, and those two provisions track very closely to the statutes, with one important exception. The statutes impose on those who are self-employed a tax on quote self-employment income, that's on employers they impose a quote excise tax, that's section 3111, and on employees they impose a tax on the income, quote income of every individual, that's section 3101. So in the statutes we see three distinct descriptions, excise, self-employment, and income, but then when we come to the covenant there's only two. Before the covenant there was a tax for the local analog to social security and it included, it had an employee tax, is that right? Well as to these workers, my understanding is your honor that they were excluded entirely, and I'm sorry, I don't know the answer to the question with respect to the citizens of the Marianna Islands. So when you match up the covenant language, again as amended from an earlier more general version, against the statutes and you see that they specifically referred to two but not to the third, I think the conclusion is that they meant to cover only the two and not the third. Now the government's response to this, and the Zancor's response to this, is that well what we construed is covering all three. Even if that were true I don't think it would be relevant, where we're dealing with specific terms that are used in a specific context here. But even more generally, the Black's Law Dictionary definition to which the government cites and to which the Zancor cites was from an edition that was issued after the covenant was entered into. And when you look at the 1968 fourth edition, it used a much more narrow definition of excise tax that would cover the tax on the employer but not the tax on the employees. And indeed, if the government's broad interpretation of the word excise were adopted, it would render superfluous. Let me ask you something, why then, assuming you were right about a limitation in 606B, why wouldn't 601 cover it anyway? Here I think it's the point you alluded to earlier, Your Honor, which is 606B is the much more specific provision that governs. Well, fine, but you're really saying, well this particular subpart is really income tax. Well if it's really income tax then it's already covered and that's why they didn't have to cover it here, why not? Well, again, 601A and 601C are dealing generally with income taxes. This deals specifically with taxes to support the Social Security program. Specifically with excise and self-employment taxes, which you're saying doesn't include taxes on the employees which are income taxes. It's dealing specifically with the subject matter of taxes to support... Well, you're now switching from one gear to another as it benefits you, but your argument as to the limitation, as to why the employee taxes aren't covered is because this is only about excise and self-employment taxes. No, I think, with respect, Your Honor, I think my point that I'm trying to make is that 606B deals with the subject matter of Social Security taxes and benefits. That's more specific than the more general provision in 601, which deals with income taxes generally. And it's worth noting, Your Honor, that the government's brief describes all of the taxes that support Social Security as employment taxes. So under the government's view of it, the word income taxes is used in 601 wouldn't apply. Okay. I mean, they're right. On this one, I think they are right, Your Honor. And I think for the reason I just described a minute ago, the subject matter of 606 is the one that governs. Now, the government says, well, this would be crazy to say that these non-resident workers don't have to pay the employment tax. It wouldn't only be the non-resident workers. That's why your argument is so... Okay. That any workers would have to pay the... I mean, to my mind, really not a bad argument, but except that its result would be that nobody in CNMI pays the employee part of FICA. So you might ask, well, why would they do that? Yeah, why would they do that? And I think the historical record is replete with a recognition of the burdensome nature of bringing the CNMI into the federal system, and in particular with respect to the burdensome nature of the FICA taxes. I mean, it's a tax break. Tax breaks, that's... I mean, read the newspapers about all of the complaints about the irrationality of tax breaks. This is a tax break given to wage earners in a country where the whole point of entering into... of seeking a political union with the United States and entering into this covenant was to find ways to develop the local economy. And it makes sense to me that in that context, just... Well, in that context where the concern that animated this whole thing was a stagnant economy that needed encouragement that these employees would not be subject to this tax, which has been widely recognized as quite burdensome in comparison to the former scheme. And indeed, these workers weren't subject to taxation at all under the former scheme. These workers in particular. I have kind of a different take on this. I mean, 606B says those laws of the United States which impose excise and self-employment taxes. So that's a clear reference to FICA, right? Because FICA imposes excise taxes. It's a clear reference to Section 3111, which is the tax on employers. But it doesn't say... 606B doesn't say those laws of the United States which only impose excise. I mean, it's undisputed that FICA does impose excise. It might do something else, but it does impose excise. And it doesn't have the limitation after that in the language of 606B. Well, it imposes an excise tax on employers and on employees. But doesn't that fit this definition? Because it doesn't say those laws of the United States which only impose excise taxes. It says which impose excise and self-employment. So it is such a law that would apply in this situation because it does impose an excise tax on employers regardless of what it imposes on employees. Yeah, and so in this part of my argument, Your Honor, that's what I'm addressing is the employees. I understand that, but what I'm saying is that regardless of what FICA actually does with respect to employees, it still is one of those laws in the United States which imposes excise taxes. It imposes an excise tax on employers. Yeah, so it is one of those laws that imposes excise taxes. It does other things, too. I think that there are – well, our argument would be that – This is not the argument of the district court or in Stang. This is something that if you – just by reading the plain language of the statute. My reading of it is when you have, you know, three taxes in the FICA statutes and only two of them are referred to in the covenant, that that's an exclusion of the third. The specification of two excludes the third. You have it in front of me, but it has subparts, right? Some of them deal with employee taxes. Some of them deal with employer taxes. Some of them deal with self-employment. They're different – actually, different sections of the code, 3101, 3111, and 1401. The government refers to cases that have talked about – use the word excise to describe both – in reference to both employer and employee taxes. I think if the court looks at those cases, they're not addressing this issue. They're just simply citing the same statutes that we're citing here. And I think in this context where we're trying to figure out what the covenant means when it uses the precise terms, that those other cases aren't relevant. And I think the same thing with the provisions of the legislative history that they refer to. They're not addressing this issue. I don't think you adequately addressed my question, maybe because you hadn't thought about it in this way before now because people aren't arguing it that way. I mean, I just – what is the answer? Well, I confess, Your Honor, I'm not sure that I am following it. Okay. To the extent that Your Honor is suggesting that it – I'm just suggesting that the language in 606B says those laws in the United States which impose excise taxes, and they apply, as in Guam. And FICA is clearly a statute that imposes excise taxes regardless of what else it does. And it's not an exclusive definition. It doesn't say only impose excise or excise only taxes. It's just – it can be in part excise taxes. Anyway, maybe no one else has addressed the thought. I don't know. You can have recital and think about it. The point is that because it refers to one aspect of what the FICA taxes do, that that incorporates all of the various aspects of what they do. Right. Because it's such a law. It doesn't say FICA. It says – or that part of FICA that imposes excise. It says those laws, which is really broad. I think that would, Your Honor, render superfluous the word and self-employment taxes. Why? Because if the reference to those laws, which impose excise taxes, was enough to incorporate all of the various taxes imposed by – But self-employment is not an excise tax. Under the government's view, it would be. And I think that – I'm not sure of that. Well, I don't know that they would concede it, but certainly, Your Honor, the breadth of the definition they're adopting and the breadth of the definition that was used in the bank case – Could I just – Go on. I wanted to just make sure that I covered our point about the as-they-apply-in-Guam language, that even if the government's view that that is the governing standard, even under that view, we have to look at how do they apply in Guam. Now, the government has recognized that the Guam exception that we've described in our brief, which covers workers in Guam who are there on an H-2 visa and who are Filipino, they've conceded that that exception applies in the CNMI as to Filipino workers in the CNMI, which undercuts their assertion that there has to be a specific – I think they didn't concede that. I thought they said that it only applied to people who could get an H-2 visa and that H-2 visas were unavailable to Filipinos who come to work in the CNMI. Thank you for that clarification. Yes, exactly. And what they recognize is that even though H-2 visas are not available in the CNMI, the counterpart to that is a worker permit under the Non-Resident Workers Act. And so the government has recognized that in applying the language as they apply in Guam, we have to take account of the differences between the two countries. It can't be completely mechanical. But they try to draw the line and say, but it's still limited to Filipino workers. And we think that that's still infringing on the purpose of this covenant, which is to give effect in CNMI, taking account of its own economic and legal circumstances, including that it was not governed by U.S. immigration law, taking into account all of those differences, then you give effect to this. And so what was going on in Guam is that the Filipino workers made up essentially all of the non-resident temporary contract workers. And so in Guam, workers who come to Guam on a temporary contract basis as non-residents, no path of citizenship, are not subject to taxation. And at the time that was adopted, the recognition was that it would not be fair to subject them to taxation when they're not likely ever to qualify for benefits. And our position is that same principle applies in the CNMI and cannot be limited simply to the Filipino workers. In Guam, it was essentially the entire alien workforce. And that same principle should govern in a CNMI, particularly when you recognize that it had its own immigration authority. And it was entitled to choose, exercising that immigration authority, which countries it would accept non-resident workers from. And I think the relevant policy considerations, again, support that. When you look at the history of the covenant, it was to spur economic development. And it was to... There was lots of concern about mitigating the tax burdens and phasing things in. And in contrast to all of that, under the government's position, you have this extraordinary new obligation that doesn't apply in Guam, that non-resident workers are subject to taxes now in the CNMI they've never been before, and which they, to this day, still are not in Guam. And I think giving effect to the, as they apply in Guam, language of the covenant, requires that you give effect, give full effect to that, including to the workers here at issue. And I'll reserve the remainder of my time for rebuttal. All right. Thank you, Counsel. Thank you, Your Honors. I am thinking that I should first address the excise tax issue and whether employees in the Northern Mariana Islands are subject to FICA taxation. I guess I would start with the very broad conclusion that to have exempted every single employee in the Mariana Islands from FICA... Pardon me? Let's start with an agreement that seems improbable. But the question is, how do you get there with this statutory laxity? Yes, Your Honors. It seems to me, just as a takeoff point, that it's fairly stark that the drafting history here is that there was a provision that would have done exactly what you say. And then, for some reason, which no one seems to know, it was made more specific. And instead of saying those laws of the United States which impose taxes to support and which provide benefits, they put in imposed excise and self-employment taxes. Now, unless you think these people were just idiots or exercising their mouths for no reason, why would they do that if they didn't mean something? Your Honor, I can only speculate because there's no explanation of why that change occurred. I can only speculate that the thinking was it made it more specific to address both self-employment taxes, which are income taxes, and under the income tax provisions, and then we would submit... Employee taxes are also income taxes. Pardon me? Employee taxes are even more clearly income taxes. Your Honor... Just a minute, I'm sorry. The statute, the FICO, uses the word income. There's a separate provision on excise. There's a separate provision on self-employment. It uses the word income. The solution I suggested is maybe at that point we bump back to the income, to the tax provision, 601. But how you can say that the excise tax covers the income part or the employee tax, I have a real problem with that. Well, I'll try to work my way through it then, Your Honor. And I'm happy to endorse your reading of 601 as embracing if the court were to view this as an actual income tax within the meaning of the income tax provisions, then it would seem to me that 601 takes care of it, then, that the... It uses the language income. That's the one language it does use, the statute, I mean. The statute that imposes the tax on employees speaks in terms of income from wages from employment. So it's a subset of the income and it's an employment tax. The tax imposed on the... Is it reported on the income tax return as well? FICA taxes? No, Your Honor. Individuals do not report their FICA tax obligation because we view it as an employment tax. It comes under the rubric of employment. Tax on being employed. Pardon me? Tax on having a state of employment. Exactly. And that's the way we have argued it, Your Honor, that it's a tax on wages. And wages are a subset of income. The employer obviously is paying it out, so for, you know, then you speak in terms of... Just to step back, you submitted a letter brief saying that you agreed that the corporations here have standing to assert these claims on behalf of their employees. And as I understand it, that's because they have paid the employee portion of the FICA tax. And so that's why they have standing. Is that correct? There are two reasons why. And the two cases have slightly different postures. In the Concord case, individual employees are plaintiffs, and so there's not... doesn't seem to be an issue there. The issue was more with the American Pacific case, because the employees are not... they are not parties. We... Yes, these employers have paid. They've withheld from their employees' wages and paid over to the government the employee portion of FICA. I mean, that's the way the FICA system works. For employees, it's withheld, it's paid over. Then the employer pays its separate portion of the FICA taxes, and together those are the social security or employment taxes. And they come under the rubric of employment taxes in subtitle C. So they're a different animal from the income taxes, which we pay on 1040. These are paid for workers. They're generally paid automatically by the withholdings from wages. So one part of the standing aspect is, have you actually paid this money over, both for yourself as an employer and then on behalf of your employees? And the second part of the standing inquiry was, have the certifications been... have those employees consented to the employer undertaking the suit on their behalf? I understand that it's some but not all. That's our reading of the complaint and the attachments to the complaint. Officially to confer jurisdiction? Yes, Your Honor. We think that it was sufficient after consulting with the IRS and after they had looked at the data that the employers had submitted. But if you look at the record sites that we included in that letter brief, there are certain employers who have not submitted the certification. So we would submit that. With respect to them, if the court were to think otherwise and take a different view than the district court, then that matter would need to be sorted out in further proceedings. But we're certainly hoping that the court takes the same view that the federal circuit took of this interpretive issue of the term excise taxes. The Zhang court went through a very careful and I think thoughtful analysis, first looking at the statutory structure of employment taxes. They are... I mean, this is sort of maybe an obvious point or... Anyway, they are in the employment tax sections. And then the tax, insofar as it's a tax on income of employees, it's only income with respect to wages from employment. At that point, the Zhang court and the district court looked at that term excise. And the dictionary definitions of excise are broad enough to encompass a tax on the performance of an act, engagement in an occupation. And there's no reason to think... There are three relevant sections, one of which deals with self-employment tax, one of which is called excise tax, right? And the other one, which is not called excise tax, and which... It's not really an... I mean... Well, but it's not called an excise... I mean, for some reason, they seem to have picked out two out of the three subsections that usually support the social security system and not the third one. I mean, it's just very difficult to explain why it would have been written that way if they meant to encompass all three. I think they were... Best I can say, Your Honor, is that they were speaking broadly. They were speaking in terms of the official... Well, they were speaking broadly. They didn't have to do it at all. I mean, they hadn't done it at all, in fact. And then they went back and made it more specific. Well, I think that earlier version did not specify the self-employment taxes. I think what they were trying to get at was to... But they didn't have to because it said those laws that support the social security system. There was no reason to. There is no particular explanation for why they put that in, and that goes to my point that to exempt all employees from the laws that impose taxes to support the social security system, to silently exempt all the employees in the Mariana Islands would be an astonishing exemption in the face of the legislative silence. I don't know exactly what, but something I read with regard to the run-up to the covenant, there was discussion as to why they were delaying the FICA tax until the effective date was that this is going to be a great deal of money to these people compared to what they were paying before. Indeed. And so that would be a reason. I.e., we really want to leave it out because this is so much money that we don't want to make the employees pay their part. I think, Your Honor, that actually supports... I mean, it would be extraordinary, but it is an explanation. Well, no, Your Honor. I think, respectfully, I disagree. I think you've actually made my point for me that Congress was anticipating, the drafters of the covenant and Congress were anticipating that all these workers were going to have to pay social security taxes, and it would be... Somebody was going to have to pay a lot more than they were paying, and that... I.e., the companies and the self-employed people, and maybe they just said they're the poorest of this group, i.e., the... I mean, do I think so? You want some more evidence of it, but it's not... There is a story which would fit. There is, Your Honor, but I think the concerns about the burden and the reason why it was phased in gradually support the idea that it was going to be applied the way it is applied in the United States. I mean, in the United States, employees, no matter what their personal situation, from poor to wealthy, pay... If they're earning wages, they pay employment taxes. They pay their... The amount is withheld from their wages, and then it is paid over to support the FICA system. Why the Mariana Islands would be accepted from those laws of the United States would be really quite astonishing without more discussion of that. It's also clear that Congress was very motivated to have this... What about my suggestion that maybe they were referring to FICA by using the word excise, and they meant the FICA system by using excise because the employer... At least the employer's part is clearly excise. And rather than assuming that they made an inadvertent drafting error, we have to fill in with... I'd be happy to embrace that. You're not arguing it. I'm just wondering because I don't think they would have... I mean, I don't want to speculate. It's not there. Because they do talk about laws of the United States is very broad, and supporting the United States Social Security system, those are both two very broad concepts, and they embrace the idea of employee and employer portion of it. I would submit that excise tax is being used as a shorthand for the employment portion of FICA taxes, both employer and employee segments. To be clear, because the employee is required to pay a certain amount of income, a lot more may be taken, but then they have a right to get back over payments. Whatever is paid into FICA, the individual employee never has a right to get it back from the employer or the government, right? Unless it's incorrectly calculated. That's correct, Your Honor. It doesn't operate the same way as the 1040 income tax system, where if you think you've overpaid because you have more deductions or what have you, and you file your return and ask for a refund. Employment taxes are turned over by your employer. Now, obviously, in this situation, the employers are seeking refunds, and they can in circumstances where they say they've overpaid and employees agree. Pardon me? Or that they never had to pay in the first place. Yes, yes, that would be correct. I would also say, to go through the paces, Your Honor, we would say the statutory structure really supports this because these taxes are in the employment tax section, which is not income tax. The statutory language, excise tax, is not a term that's defined in the code, and so when you look outside the code for a definition, certainly the definitions are broad enough to encompass a tax on the engagement of an occupation, which would fit with the employee portion. Counsel referred to the various editions of Black's Law Dictionary and suggested that the editions, when the drafters were working on this, were different. That was in the reply brief, so we didn't have an opportunity really to respond, but they actually cited our surdap and zhong, and we addressed that point in the surdap and zhong, and, in fact, there were dictionary definitions at the time that are precisely what we are suggesting here. We also submit that the legislative history of the covenant overwhelmingly supports our view because it refers repeatedly and quite broadly to the laws of the United States which impose taxes to support the United States social security system with no distinction whatsoever between employer and employee portions and no reservation with respect to the employee portions. In particular, the section by section analysis, which is the statement of the drafters of the covenant, refers again broadly to the laws of the United States which impose taxes to support the social security system. There is nothing whatsoever in any of the legislative history, either that section by section analysis, the House report, the Senate report, the interim reports from the individuals working on implementing the covenant, contains any suggestion whatsoever that the laws that support the social security system are limited to the employer portion of social security, and so to the extent that this segment of the covenant is ambiguous and raises this question, it's entirely appropriate to look to that legislative history to see what the drafters were thinking of, and what Congress was thinking of when it enacted this, and I think it would have been a huge thing for Congress to pass a law that exempted all employees without making some comment about that. Finally, there's some case law that supports this as well where excise taxes are used to refer to both the employee portion and the employer portion. The Supreme Court case of Fiorditalia, it seems to use excise, the term excise for both the employee and employer portion, and there's another case from the Fifth Circuit that we've cited that the system funds excise taxes separate from the income taxes. So I guess in conclusion, it's sort of the common sense reading that would avoid an observed result. The Commonwealth of the Northern Mariana Islands is part of the United States, and the laws of the social security system apply to the Commonwealth, and they apply as they do in other areas of the United States. Council also referred to the exception for workers from the Philippines that applies to Guam, and as I understand their argument, it's kind of a policy argument that while our Chinese national workers who are temporarily working in the Northern Marianas, they're similar to the Philippine workers. Well, I suppose their argument is sort of a level of generality argument. Pardon me, Your Honor? It's sort of a level of generality argument. That is that the government recognizes that it isn't to be applied literally so that you apply it to Filipinos who aren't, in CNMI, who aren't subject to H-2 visas but to similar visas or similar immigration situation. And they're saying that, well, if you're going to do that, and that they agree that you should do that, then you can go up one level of generality, so to speak, and apply it to non-Filipinos in similar situations. So where's the line? Your Honor, what they're referring to is kind of a brief amnesty period. It's not an overall exemption of employers and an overall relief provision with respect to the H visas. Now the immigration laws apply in the Northern Marianas as they apply elsewhere in the United States. But the IRS did permit kind of a little relief provision for those employers who were confused about whether they were obliged to pay FICA taxes with respect to workers who had the Commonwealth equivalent of the H status. But that amnesty, if you will, ended as of January 1, 2015. So to use that as kind of a springboard for saying, well, gosh, we should exempt any kind of worker. Well, it's not a springboard. My understanding is they're saying that that methodology, i.e. looking at what's similar in the real world sense as they apply in Guam rather than as the statute says they apply in Guam. That seems to be their difference. Although the IRS was clear in its announcement, I believe, in saying they were not making that kind of generalized. They were saying, in fact, you should have paid the tax, but because there was confusion, we'll forgive it for a year or two. But it was not a generalized principle that, oh, because this is functionally the equivalent. They're sanctioning. They are arguing for such a principle. Yes. That would reach that conclusion with regard to the Filipinos in CNMI, but also with respect to the Chinese in CNMI. And I suppose any other worker who was analogous to a worker from the Philippines. All right. Thank you, Counsel. Thank you. Thank you, Your Honors. Let me just address briefly that very last point about the supposed amnesty period. What the IRS did in that bulletin in 2012 was agree, contrary to what it said a year earlier, to continue the policy that had been in effect throughout the relevant period of recognizing in the CNMI the same exception that applies in Guam. So it wasn't just a limited amnesty period. It was a policy that applied throughout the years that were at issue here. And you're correct, Your Honor, that our point is that you have to look at this at the appropriate level of generality. And that, in this case, entails looking at the CNMI's immigration policies and its economic circumstances and applying the same principles that apply in Guam, applying those in the CNMI. Thank you very much, Counsel. I versus Concord Garment Manufacturing.
judges: Wardlaw, Berzon, Owens